## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| VINCENT HAWKINS, | : | |
| | : | |
| Petitioner, | : | Civ. No. 16-2321 (RBK) |
| | : | |
| v. | : | |
| | : | |
| PATRICK NOGAN, et al., | : | **OPINION** |
| | : | |
| Respondents. | : | |

---

**ROBERT B. KUGLER, U.S.D.J.**

## I.    INTRODUCTION

Petitioner, Vincent Hawkins, is a state prisoner proceeding *pro se* with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted in 2006 by a jury of second-degree burglary and third-degree theft.  He is currently serving a sentence of twenty years imprisonment with an eighty-five percent period of parole ineligibility pursuant to New Jersey's No Early Release Act ("NERA").  N.J. Stat. Ann. § 2C:43-7.2.  For the reasons set forth below, the petition will be denied and a certificate of appealability shall not issue.

## II.    FACTS

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will recount salient portions of the recitation of facts as set forth by the New Jersey Appellate Division on Petitioner's appeal of his petition for post-conviction relief ("PCR"):

On direct appeal, we outlined the facts proved at trial:

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

The victim, Pedro Santiago, testified at trial that at approximately 11:00 a.m. on September 23, 2005, he was in bed in his apartment in Bridgeton when he heard his apartment door open. He went into the living room to find defendant stuffing his belongings into a bag. As Santiago approached, defendant, who was wearing white and grey socks on his hands, dropped the bag and pulled out an approximately three to four inch knife. The two men struggled, and the struggle continued into the street. When defendant heard someone say that the police had been called, he redoubled his efforts and fled. When his shirt came off, he was freed from Santiago's grip and ran.

When the dispatch went out regarding the incident, police who were gathered at an unrelated investigation site nearby almost immediately observed a man who matched defendant's description running toward them. Among others, Patrolman Deena Glover–Bertolini and Lieutenant Mark Ott pursued defendant in their separate patrol cars. Glover–Bertolini pulled up in front of defendant, who upon seeing her, said "Oh, s-t," and ran the other way. Lieutenant Ott also pulled up alongside defendant, got out of his car and drew his weapon, at which time defendant stopped running and dropped to his knees. Once arrested, police found a pocket knife, a screwdriver, and some socks in defendant's pockets.

Patrolman John Sloboda observed fresh pry marks on Santiago's door, the door latch and the knob. There were paint chips on the floor, directly below the door frame.

One of the State's witnesses was the victim's landlord, who observed the struggle between Santiago and defendant. She testified that defendant shouted out, "Does anybody here speak English?" and, "Can't you tell them I just wanted to feed my family?" She was the person who triggered defendant's flight by saying that she was calling police.

At trial, defendant testified that he was in Santiago's apartment solely to collect $80 he had loaned Santiago the prior day to buy drugs. He said that the victim would not pay him back in cash, but agreed that he could take some of the victim's belongings in lieu of the money. When he attempted to place items of value in the bag, however, Santiago assaulted him. Defendant claimed that the screwdriver actually belonged to Santiago, who threw it at him, striking the door and thereby

causing the pry marks and chipping the paint. Defendant also claimed that he had been wearing two pairs of socks and had to remove one pair while running from the scene because his shoes were falling off. Defendant acknowledged three sanitized convictions on direct and was briefly examined about them on cross-examination as well.

[*State v. Hawkins,* No. A–0782–07, 2009 WL 1872330, at *1-2 (N.J. Super. Ct. App. Div. July 1, 2009).]

Defendant also claimed that he had asked the landlord to call the police, and that he ran away to call the police, but he was afraid when he saw the first police car and kept going until the officer from the second police car drew his weapon.

A grand jury issued a five-count indictment, charging defendant with third-degree aggravated assault, *N.J.S.A.* 2C:12–1b; third-degree possession of a weapon for unlawful purposes, *N.J.S.A.* 2C:39–4d; second-degree burglary, *N.J.S.A.* 2C:18–2a(1); fourth-degree criminal trespass, *N.J.S.A.* 2C:18–3a; and second-degree robbery, *N.J.S.A.* 2C:15–1a(1)–(2). The criminal trespass count was dismissed before trial.

Defendant was tried in August 2006 before Judge Timothy G. Farrell. The jury acquitted defendant of aggravated assault, possession of a weapon for unlawful purposes, and robbery. The jury convicted defendant only of burglary and a lesser included charge of third-degree theft, *N.J.S.A.* 2C:20–2b(2)(d). At sentencing, the theft conviction merged into the burglary conviction. The trial judge sentenced defendant to twenty years in prison.

*State v. Hawkins*, No. A-1093-11T2, 2013 WL 1953647, at *1–2 (N.J. Super. Ct. App. Div. May 14, 2013).

### III.    PROCEDURAL HISTORY

The New Jersey Appellate Division affirmed Petitioner's conviction and sentence on July 1, 2009.  *See Hawkins,* 2009 WL 1872330, at *4.  Petitioner appealed to the New Jersey Supreme Court, but on October 23, 2009, the court denied his petition for certification.  *See State v. Hawkins*, 988 A.2d 565 (N.J. 2009).

In January 2010, Petitioner filed his first petition for PCR.  (*See* ECF No. 6-16.)  Following an evidentiary hearing where Petitioner's trial counsel testified, the court denied Petitioner's application.  (*See* ECF Nos. 6-17, 6-18.)  The Appellate Division affirmed the denial of Petitioner's PCR, *Hawkins*, 2013 WL 1953647, at *7, and the New Jersey Supreme Court denied certification, *State v. Hawkins*, 80 A.3d 746 (N.J. 2013).

In late 2013, Petitioner submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See Vincent Hawkins v. Paul Lagana et. al.*, Civ. No. 13-7319 (D.N.J.).  On December 16, 2013, the Court issued a notice to Petitioner, pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), informing him of the consequences of filing a habeas petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), and permitting him the opportunity to file one all-inclusive § 2254 petition.  (*See Hawkins*, Civ. No. 13-7319, at ECF No. 2.)  Petitioner was provided the option of having his petition ruled upon as filed or withdrawing his petition and filing one all-inclusive § 2254 petition subject to AEDPA's one-year statute of limitations.  (*See id.*)  Petitioner submitted a letter advising the court of his request to withdraw his petition in order to return to state court to exhaust additional claims.  (*See Hawkins*, Civ. No. 13-7319, at ECF No. 3.)  Petitioner did not request a stay, and the Court withdrew his petition.  (*See Hawkins*, Civ. No. 13-7319, at ECF No. 4.)

In January 2014, Petitioner filed his second PCR in state court.  (*See* ECF No. 6-22.)  The state court denied the PCR as time-barred, as well as on the merits.  (*See* ECF No. 6-27.)  The Appellate Division affirmed the denial of Petitioner's second PCR for substantially the same reasons.  *See State v. Hawkins*, No. A-5035-13T2, 2015 WL 7079060, at *1 (N.J. Super. Ct. App. Div. Nov. 12, 2015).  On March 18, 2016, the New Jersey Supreme Court denied certification. *See State v. Hawkins,* 135 A.3d 146 (N.J. 2016).

On April 20, 2016, Petitioner filed the instant habeas action.[2]  (*See* ECF No. 1.)

Respondents filed an answer, addressing the Petitioner's claims on the merits and raising the

affirmative defense that the Petition was time-barred.  (*See* ECF No. 6.)  Petitioner filed a traverse

in response.  (ECF No. 7.)

## IV.    HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state

court can only be granted for violations of the Constitution or laws or treaties of the United States.

*See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d

Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after

April 24, 1996, thus, AEDPA applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under

AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state

court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in state court. *See*

28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established

Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538

U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under §

2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state

---

[2] Although Petitioner's filing was docketed on April 22, 2016, he signed the Petition and placed it in the prison mailing system on April 20, 2016. (*See* D.E. No. 15 at 16).  Under the federal prisoner mailbox rule, "a document is deemed filed on the date it is given to prison officials for mailing."  *Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011).  The Court, affording Petitioner all favorable inferences, will use April 20, 2016 as the date he filed his Petition.

court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[Federal courts] may not characterize [] state-court factual determinations as unreasonable 'merely because [they] would have reached a different conclusion in the first instance.' [. . .] If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's … determination.'" *Brumfeld v. Cain*, 135 S. Ct. 2269, 2277 (2015) (alterations in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Dennis Sec'y Dep't of Corr.*, 834 F.3d 263, 353 n.10 (3d Cir. 2016) (Jordan, J., concurring in part and concurring in the judgment) (noting that while *Ylst* predates the passage of AEDPA, the *Ylst*

presumption that any subsequent unexplained orders upholding the judgment will be presumed to rest upon the same ground is still valid). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

## V. TIMELINESS

Under AEDPA, Congress set forth a one-year statute of limitation for the filing of federal habeas corpus petitions by state prisoners. *See Douglas v. Horn*, 359 F.3d 257, 261 (2004); 28 U.S.C. § 2241(d)(1). This one-year time period is codified under 28 U.S.C. § 2244(d), and states, in pertinent part:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of-
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

28 U.S.C. § 2244(d).

Additionally, under 28 U.S.C. § 2241(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." This exception to the one-year limitation period is known as statutory tolling and it provides that the one-year limitations period is tolled during the time a properly filed application for post-conviction relief is pending in state court. *See Merritt v. Blaine*, 326 F.3d 157, 161 (3d

Cir. 2003). To fall within this tolling provision, the petition for state post-conviction review must have been both pending and "properly filed." *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir.), *cert. denied, Horn v. Fahy*, 534 U.S. 944(2001). An application is deemed "properly filed" when it is submitted in compliance with the state's procedural requirements. *See id.; see also Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). Importantly, it is well established that a petition for state post-conviction relief that was rejected by the state courts as untimely is not deemed "properly filed" under § 2244(d)(2). *See Pace*, 544 U.S. at 414 ("When a postconviction relief petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2)") (internal quotation marks and citation omitted); *see also Allen v. Siebert*, 552 U.S. 3 (2007).

Here, Petitioner's judgment of conviction was entered on October 27, 2006. (*See* ECF No. 6-12.) However, his direct review did not conclude until the New Jersey Supreme Court denied a petition for certification of his direct appeal on October 23, 2009. *See Hawkins*, 988 A.2d at 565. A petitioner thereafter has ninety days to seek certiorari from the United States Supreme Court. *See* United States Supreme Court Rule 13.1. Even if a petitioner does not seek appeal from the United States Supreme Court, his one-year statute of limitations still does not begin to run until that ninety-day period expires. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (holding that judgment becomes final upon conclusion of direct review which includes the time for filing a petition for writ of certiorari in the United States Supreme Court). Since Petitioner did not seek review from the United States Supreme Court, his conviction became final ninety days after the New Jersey Supreme Court ruling, or January 21, 2010.

In January 2010, Petitioner filed his first PCR petition. (*See* ECF No. 6-16.) This filing provided a statutory tolling of Petitioner's one-year statute of limitations. *See Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003). Petitioner's PCR remained pending in state court until the New

Jersey Supreme Court denied his petition for certification on November 8, 2013. *See Hawkins*, 80 A.3d at 746. Thus, when Petitioner filed his first habeas petition in late 2013, his submission was timely filed within the one-year statute of limitations. *See Vincent Hawkins v. Paul Lagana et. al.*, Civ. No. 13-7319, at ECF No. 1 (D.N.J.).

Petitioner's filing of his first habeas petition did not, however, toll the one-year statute of limitations. A federal habeas petition does not statutorily toll the § 2244 statute of limitations period. *See Duncan v. Walker,* 533 U.S. 167, 172 (2001). Therefore, the time period during which Petitioner filed his first habeas petition and then withdrew his petition, without requesting a stay, did not count towards any statutory tolling.

Furthermore, Petitioner did not receive statutory tolling during the pendency of his second PCR in state court because his second PCR was not properly filed. "An untimely state post-conviction petition is not properly filed for the purposes of tolling." *Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004); *see also Pace*, 544 U.S. at 414. Under New Jersey Court Rule 3:22-12(a)(2), a second or subsequent petition for PCR may not be filed more than one year after either: a constitutional right being asserted was recognized by either the United States or New Jersey Supreme Court; the factual predicate for the relief sought was discovered; or, the denial of a previous petition for PCR. In Petitioner's case, the PCR court ruled that his submission was untimely under R. 3:22-12(a)(2) because he did not file his second PCR until almost three years after the denial of his first PCR, he did not rely on a recently recognized constitutional right, nor did he base his petition on newly discovered facts. (*See* ECF No. 6-27 at 7.) The Appellate Division affirmed for substantially the reasons set forth by the PCR court. *See Hawkins,* 2015 WL 7079060, at *1. Although the PCR court also decided Petitioner's claim on the merits in an alternative holding, the United States Supreme Court has held that this has no bearing on the fact

that the application was untimely. *See Pace*, 544 U.S. at 414. A finding that a PCR is untimely is "the end of the matter, regardless of whether it also addressed the merits of the claim or whether its timeliness ruling was 'entangled' with the merits." *Id.* (quoting *Carey v. Stafford,* 536 U.S. 214, 226 (2002)). Since Petitioner's PCR was untimely and therefore, not "properly filed," he is not entitled to statutory tolling for the pendency of his second PCR proceedings. Consequently, when Petitioner filed his second petition for habeas relief on April 20, 2016, he was at least two years beyond the one-year statute of limitations.

If, however, a petitioner can demonstrate extraordinary circumstances to warrant "equitable tolling," then a court may relax the one-year limitations period. *See Jenkins v. Superintendent of Laurel Highlands,* 705 F.3d 80, 84-85 (3d Cir. 2004). In *Holland v. Florida*, 560 U.S. 631, 649-50 (2010), the Supreme Court held that AEDPA's one-year limitations period is subject to equitable tolling in appropriate instances to be determined on a case-by-case basis. *See e.g., Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). A litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418); *see also Jenkins*, 705 F.3d at 89.

"The diligence required for equitable tolling is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal quotation marks and citations omitted). "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (citation omitted); *see also Alicia v. Karestes*, 389 F. App'x 118, 122 (3d Cir. 2010) (holding that the "obligation to act diligently pertains to both the federal habeas claim and the period in which the petitioner exhausts state court

remedies"). Reasonable diligence is examined under a subjective test, and it must be considered in light of the particular circumstances of the case. *See Ross*, 712 F.3d at 799; *see also Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but it does require diligence in the circumstances.").

Equitable tolling is triggered when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." *LaCava*, 398 F.3d at 275–276; *see also Holland*, 560 U.S. at 648–49. Extraordinary circumstances have been found only where (a) the respondent has actively misled the plaintiff, (b) the petitioner has in some extraordinary way been prevented from asserting his rights, (c) the petitioner has timely asserted his rights mistakenly in the wrong forum, or (d) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim. *See Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005). However, even where extraordinary circumstances do exist, the individual seeking equitable tolling must still have exercised reasonable diligence in attempting to file their submission after the extraordinary circumstances began. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

In the instant case, Petitioner has not argued that he is entitled to equitable tolling, only that he should not be time-barred because he filed an initial habeas petition in 2013 but then withdrew that petition to return to state court. (*See* ECF No. 7.) Petitioner appears to argue that his initial habeas filing and the pendency of his second PCR in state court should have tolled the one-year statute of limitations. (*See id.*) However, as explained above, Petitioner's statute of limitations was not tolled during that time period and his instant habeas action is therefore untimely. Absent

any extraordinary circumstances, which Petitioner has not alleged, Petitioner is not entitled to equitable tolling. Accordingly, Petitioner's habeas action is time-barred.

## VI.    SUBSTANTIVE CLAIMS

However, even if Petitioner's submission had been timely, his substantive claims are still without merit to warrant habeas relief. This Court will now address each claim on the merits.

### A.  Ineffective Assistance of Counsel

In Ground One, Petitioner appears to raise two ineffective assistance of counsel claims against his trial counsel – that trial counsel was ineffective for not cross-examining the victim about his status as an undocumented immigrant, and that trial counsel failed to "discover" two witnesses that were pertinent to the case. (*See* ECF No. 1-1 at 9-10.) The Sixth Amendment of the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970)). To prevail on a claim of ineffective assistance of counsel, a party must establish that: 1) counsel's performance was deficient; and 2) the petitioner was prejudiced by counsel's deficiency. *See id.* at 687. The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688-89. Thus, the standard is highly deferential, and counsel is "strongly

presumed to have rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The petitioner bears the burden of demonstrating how he was prejudiced. Thus, where a petition contains "no factual matter [. . .] and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015) (internal quotations and citations omitted).

Importantly, even if a petitioner can establish both prongs of *Strickland*, a habeas corpus petition still fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti,* 537 U.S. 19, 24-25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

i.     *Cross-Examination of the Victim*

Petitioner first argues that his trial counsel was ineffective for not cross-examining the victim about his status as an undocumented immigrant. (*See* ECF No. 1-1 at 9.) Petitioner contends that the victim's legal status was "part of [his] defense to [the victim's] version of the events," but that counsel "failed to adequately put this in issue." (*See id.* at 10.) When Petitioner first raised this claim during his PCR proceedings, he specifically asserted that trial counsel should have questioned the victim about whether he "created this story of defendant breaking and entering his home without permission because if [the victim] told police that the dispute was over money he

13

owed for drugs, he would run the risk of being charged and possibly deported." *Hawkins*, 2013 WL 1953647, at *3.

In affirming the PCR court's denial of this claim, the Appellate Division held that not only had there not been enough "facts in evidence" for trial counsel to have questioned the victim about whether he allegedly owed Petitioner money for drugs, but also that trial counsel's decision not to question the victim on this issue was a reasonable trial strategy. *Hawkins*, 2013 WL 1953647, at *3. The Appellate Division reasoned, in pertinent part:

> Although at the time of the cross-examination, no evidence had yet been admitted that Santiago owed defendant money for drugs, defendant did later testify that Santiago asked for $80 so he could purchase four bags of cocaine from a "gentleman that was standing in front of the house." Defendant did not testify, however, that he witnessed such a purchase take place. No drugs were found by the police. Counsel had good reason not to ask a question without "facts in evidence" where defendant had no "ability to prove the facts contained in the question." [*State v. Spencer*, 725 A.2d 106, 117 (N.J. Super. Ct. App. Div. 1999).]
>
> Further, trial counsel testified that she made "a judgment call" not to cross-examine Santiago using his status as an illegal immigrant. She pointed out that the evidence showed that Santiago tried to hold defendant and await the police—contrary to defendant's theory advanced in the PCR proceedings that Santiago was trying to avoid police scrutiny. She emphasized that she did not want to take the risk of alienating this Cumberland County jury by "trying to make a huge deal out of the fact that this man was an alien," or suggesting that he had a "motive to lie about his home being burglarized because he was illegal." She testified that she did not think the dubious "return" on such questioning was worth the risk. The PCR judge credited her testimony, which was corroborated by her closing argument, and found that she had used a "reasonable trial strategy."

*Id.* at 4.

Where trial counsel makes a strategic decision after "a thorough investigation of law and facts," then counsel's strategic choices are "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Counsel should be given "wide latitude" in making "tactical decisions." *See id.* at 689.

"Judicial scrutiny of counsel's performance must be highly differential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*

Here, trial counsel clearly made a strategic decision. After reviewing the evidence, trial counsel found that the facts indicated the victim had not been trying to avoid police scrutiny, contrary to what Petitioner alleged. (*See* ECF No. 6-8 at 34-35.) Moreover, trial counsel stated that after analyzing whether or not she should inquire into the victim's immigration status, she recognized that such questioning might "alienate" the jury. (*See id.* at 35, 74.) She stated that she made the strategic choice not to question the victim about his immigration status because any "return" on that line of questioning was not worth the risk it presented. (*See id*. at 35.) Thus, the record demonstrates that trial counsel investigated the facts and made a strategic decision about her line of questioning.

Further, Petitioner has failed to demonstrate, or even allege, that there is a reasonable probability the result of the proceedings would have been different if his trial counsel had questioned the victim about his immigration status. *Strickland,* 466 U.S. at 694. Consequently, this Court does not find that the state courts' denial of Petitioner's claim was an unreasonable application of clearly established federal law, and Petitioner is not entitled to relief on this claim.

ii.    *Identification of Additional Witnesses*

In Ground Two, Petitioner argues that trial counsel was ineffective because of her "failure to discover witnesses' identities." (*See* ECF No. 1-1 at 10.) Although Petitioner's claim is somewhat unclear, this Court construes Petitioner's claim as raising the same argument that he raised during his PCR proceedings – that trial counsel was ineffective for failing to argue that the

State had committed a discovery violation by not turning over the names of witnesses who helped the victim communicate with police officers at the scene of the crime.  (*See* ECF No. 6-17 at 14-15.)  In his PCR brief, Petitioner stated that, "It is clear from the testimony of [the victim] that his communications with Officer Sloboda was through other citizens interpreting for him.  However it is clear that Officer Sloboda made no notations of these citizens that helped in his police report.  And the existence of these witnesses was never provided to the defense."  (*See id.* at 14 (internal citation omitted).)

In denying this claim during PCR proceedings, the Appellate Division stated, in pertinent part:

> Defendant also claims trial counsel was ineffective for not objecting to [. . .] an alleged discovery violation because [the victim] testified that he spoke to Officer Sloboda through two ladies who interpreted, and the officer did not record in his report and could not recall whether he was assisted by civilians interpreting Santiago.  Trial counsel in fact did object to this alleged "discovery violation," but the trial judge properly rejected her claim.

*Hawkins*, 2013 WL 1953647, at *6.

Indeed, upon hearing the victim testify at trial that he spoke to police officers through intermediaries, trial counsel requested a sidebar where the following exchange took place:

> [DEFENSE COUNSEL]: (inaudible) indicated that the police office (inaudible) using in terms of (inaudible) to speak with police officers.  The defense was advised that (inaudible) names of interpreters at that time.  We were not given those names.
>
> THE COURT: Well, was there anything in the reports that suggest that the State knew this? Because if not, that's -- I mean, if the State is as surprised as you, that's unfortunately the way it goes.
>
> [DEFENSE COUNSEL]: (inaudible) was advised but (inaudible)
>
> THE COURT: Does the State have any knowledge that this gentleman spoke through a -- in other words, that he used an intermediary to talk to police?

[PROSECUTOR]: No, this is the first time (inaudible). I don't (inaudible). Nowhere in the stack of police reports is there any reference there was an interpreter present so the defense knows as much as I do.

[DEFENSE COUNSEL]: I think (inaudible) because we're entitled to all (inaudible). Because I'm thinking he assumed that there must (inaudible).

THE COURT: Well, I don't think that's what the State assumed or what the State said. But I find no -- there's nothing in the discovery that suggests that assistance -- assisted the -- Mr. Santiago in talking to the police. I don't find a discovery [violation] regarding your objection.

(ECF No. 6-2 at 33.)

It is clear from the record that Petitioner's trial counsel *did* object at trial to the alleged discovery violation, indicating at sidebar that the State had not turned over the names of witnesses who helped the victim communicate with police at the scene of the crime. The trial court, however, did not find that such a discovery violation had occurred. (*See id.*). Thus, trial counsel cannot be said to have been ineffective for failing to object to a discovery violation to which she did, in fact, object, but was ultimately overruled.

To the extent that Petitioner is attempting to argue that trial counsel should have investigated these witnesses who acted as intermediaries, this claim also fails.[3] While a failure to investigate potentially exculpatory evidence or witnesses can form the basis of ineffective assistance of counsel, a failure to investigate claim still requires a petitioner to demonstrate that he was prejudiced. *See Strickland,* 466 U.S. at 690-91; *see also Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016). To successfully establish this claim, a petitioner

---

[3] It appears that this claim is unexhausted. However, to the extent that a petitioner's constitutional claims are unexhausted or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

"must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained ... and whether such information, assuming admissibility in court, would have produced a different result." *Id.* (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsels failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"). Additionally, where a petitioner merely speculates as to what a witness might have said if interviewed by counsel but fails to present sworn testimony from that witness, a petitioner cannot establish the prejudice prong of *Strickland*. *See Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001).

Here, Petitioner does not allege any information that could have been obtained from these witnesses, nor does he allege how any information would have produced a different result. Petitioner provides no more than a bald assertion that trial counsel "failed to discover witnesses' identities." (*See* ECF No. 1-1 at 10.) Therefore, absent any evidence, Petitioner cannot establish either *Strickland* prong for ineffective assistance of counsel and he is not entitled to relief on this claim.

### B. Illegal Sentence Based Upon Inconsistent Verdict

Finally, in Petitioner's Ground Two, he argues that his sentence was unconstitutional because it was based upon an inconsistent verdict. (*See* ECF No. 1 at 8.) Specifically, Petitioner states that, "[t]he jury acquitted on assault and weapons charges, needed elements to increase the sentence of burglary from third degree to second degree." (*Id.*)

In denying this claim, the PCR court held in relevant part:

Petitioner contends that he could not have been convicted of Second Degree Burglary since he was found not guilty of Possession of a Weapon for an Unlawful Purpose. Petitioner interprets this to mean that the jury found he did not possess a deadly weapon, even though the jury specifically noted on the jury verdict sheet that it found Petitioner possessed a deadly weapon.

A person is guilty of Possession of a Weapon for an Unlawful Purpose if there was a weapon, that person possessed it, and that person's purpose was to use the weapon unlawfully. At Petitioner's trial, the court explained to the jury that the State contended Petitioner's unlawful purpose was to use the weapon to threaten or injure Pedro Santiago. A person is guilty of second degree burglary if that person enters a structure without permission, they enter the structure with the purpose of committing a crime, and that person is armed with or displays what appears to be a deadly weapon.

Unlawful Possession of a Weapon requires a specific state of mind in regard to the weapon, Second Degree Burglary does not. At trial, Petitioner admitted that he was carrying a knight during the incident, but also said that he carried it on him every day. Based on this evidence, the jury could have easily determined that Petitioner did not have an unlawful purpose in possessing the knife, but did possess the knife during the alleged burglary. As such, the verdict is not inconsistent.

(ECF No. 6-27 at 7-8.)

The New Jersey Appellate Division summarily affirmed the PCR court's denial of Petitioner's claim. *See Hawkins*, 2015 WL 7079060, at *2.

Generally, "inconsistent verdicts are constitutionally tolerable." *Dowling v. United States*, 493 U.S. 342, 353-54 (1990) (citation omitted). Challenges to alleged inconsistent verdicts are analyzed under the standard articulated by the Supreme Court in *Dunn v. United States*, 284 U.S. 390 (1932). In *Dunn*, the Court declined to disturb a conviction stemming from a jury verdict just because it was inconsistent with its acquittal on another count. *See id.* at 393-94; *see also United States v. Powell*, 469 U.S. 57 (1984). The Court held that so long as there is sufficient evidence

to sustain the conviction for the charge of which the petitioner has been found guilty, a reviewing court will not disturb the conviction. *See id.* at 393.

Here, the record demonstrates that the verdict was appropriate. As the PCR court emphasized, in New Jersey the charge of unlawful possession of a weapon requires a specific state of mind – the intent to *use* the weapon unlawfully – whereas, the charge of burglary only requires that a person *have* or display a deadly weapon. *Compare* N.J. Stat. Ann. § 2C:39-4(d), *with* N.J. Stat. Ann. § 2C:18-2(a)(1). Thus, the jury having found that Petitioner *possessed* a weapon during the commission of a burglary, did not necessitate a finding that he also intended to *use* that weapon unlawfully. Therefore, the jury's verdict was not inconsistent.

Furthermore, there was also sufficient evidence to sustain Petitioner's conviction for second-degree burglary. This Court will recount only the pertinent information to evaluate this claim. At trial, the victim testified that on September 23, 2005, he was in bed in his apartment when he heard his living room door open. (*See* ECF No. 6-2 at 15). The victim stated that this door had been locked and that when he went into his living room to investigate, he saw Petitioner taking items from the living room and putting them into a bag. (*See id.* at 16). The victim testified that he did not know Petitioner, that Petitioner did not have permission to be in the apartment, and that when the victim confronted him, Petitioner pulled out a knife from his pants. (*See id.*). The victim stated that a struggle ensued until Petitioner heard that someone had called the police, whereupon he fled. (*See id.* at 19). Police, who were nearby for an unrelated investigation, saw Petitioner running towards them and upon stopping him, discovered a pocket knife and a flat head screwdriver, among other items, in his pockets. (*See id.* at 42). Officer Sloboda who investigated the crime also testified at trial and stated that he observed fresh pry marks on the victim's door, the door latch, and the door knob. (*See id.* at 48). Although Petitioner testified at trial and provided

a different version of events, this Court finds that there was sufficient evidence, if believed, to find that Petitioned entered the victim's apartment without permission, with the purpose of committing a crime, and was armed with a deadly weapon – thereby satisfying each of the elements necessary to sustain a conviction of second-degree burglary. Accordingly, Petitioner is not entitled to relief on this claim.

## C. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner fails to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability shall not issue.

## D. CONCLUSION

For the reasons stated above, the Petition for habeas relief is DENIED, and a certificate of appealability shall not issue.


DATED: <u>March 7, 2019</u>                       _s/Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge